**Ex Parte Elton Ray BARNES.**

Nos. 2–96–321–CR, 2–96–322 CR, 2–96–323CR.

Court of Appeals of Texas, Fort Worth.

Dec. 2, 1997.

Rehearing Overruled Jan. 29, 1998.

Robinson, Smart and Gary D. Smart, Tarrant County, for Appellant.

Tim Curry, Criminal District Attorney, Charles Mallin, and Christy Jack, Assistant District Attorneys, Tarrant County, for Appellee.

## OPINION

BRIGHAM, Justice.

### Introduction and Background

Appellant Elton Ray Barnes was indicted, in three separate indictments, for the offenses of indecency with a child and aggravated sexual assault of a child. He filed a pretrial application for writ of habeas corpus asserting that the trial court had an obligation to discharge him under articles 32.01 and 28.061 of the code of criminal procedure because the State had not timely indicted

him. The trial court conducted a hearing at which it found that the State had failed to timely indict appellant but had demonstrated good cause for its failure to do so. Accordingly, the trial court denied the requested relief.

In our review, we determine that the State did not have good cause for failing to timely indict appellant. We hold, however, that article 28.061 is unconstitutional[1] because it violates the separation of powers provision of the Texas Constitution in much the same way as did the Speedy Trial Act. We further hold that article 32.01 is constitutional because it does not unduly infringe on prosecutorial discretion. Therefore, appellant was required to obtain relief under article 32.01 before indictment. Accordingly, we affirm the trial court's denial of habeas relief.

Appellant was indicted for all three offenses on February 15, 1996. The corresponding arrests occurred on May 16, 1995 and August 10, 1995. Appellant filed three pretrial applications for writ of habeas corpus, seeking dismissal of prosecution with prejudice on grounds of delay of indictment.[2] The trial court denied appellant's request for habeas relief on July 8, 1996.[3]

## Appellant's Point of Error

In his sole point of error, appellant claims the trial court erred in denying the writ and failing to dismiss the prosecutions with prejudice. He relies on articles 32.01 and 28.061 of the code of criminal procedure which provide:

When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation before the district court, the prosecution, unless otherwise ordered by the Court, for good cause shown, supported by affidavit, shall be dismissed and the bail discharged, if indictment or information be not presented against such defendant at the next term of the Court which is held after his commitment or admission to bail.

TEX.CODE CRIM.PROC.ANN. art. 32.01 (Vernon 1989).

If a motion to set aside an indictment, information, or complaint for failure to provide a speedy trial is sustained, the court shall discharge the defendant. A discharge under this article or Article 32.01 of this code is a bar to any further prosecution for the offense discharged and for any other offense arising out of the same transaction. . . .

TEX.CODE CRIM.PROC.ANN. art. 28.061 (Vernon 1989).[4]

Appellant claims that because the State failed to indict him within the next term of court, the trial court was required by article 32.01 and article 28.061 to dismiss the prosecutions with prejudice.

## "Good Cause" For Delay of Indictment

■ The State argues that while it is undisputed that appellant's indictment was delayed beyond the next term of court, it met its burden of showing that good cause exist-

1. We note that since this case was filed, article 28.061 has again been amended. *See* Act of June 1, 1987, 70th Leg., R.S., ch. 383, § 1, 1987 Tex. Gen.Laws 1885, 1885, *amended by* Act of May 12, 1997, 75th Leg., R.S., ch. 289, § 1, 1997 Tex. Gen.Laws 1304, 1304 (current version at TEX. CODE CRIM.PROC.ANN. art. 28.061 (Vernon Supp. 1998)). The amendment, which became effective May 26, 1997, deletes the language that made a discharge under 28.061 applicable to discharges for delay in indictment under article 32.01. The amendment specifies, however, that the change in law applies only to the prosecution of a defendant arrested for an offense on or after the effective date of the amendment. Therefore, the amendment does not affect our analysis of the constitutionality of article 28.061 as it applies to this case.

2. The terms of Tarrant County Criminal Judicial District Number One and the 213th Judicial District Court begin on the first Mondays in January, April, July, and October. *See* TEX.GOV'T CODE ANN. § 24.910 (Vernon 1988).

3. The order of the trial court reads that appellant's applications for writ of habeas corpus were denied. However, after reviewing the court reporter's record from the hearing, it is clear that the trial court heard testimony going to the merits of appellant's claim; therefore, the trial court's order denying relief is appealable. *See Ex parte Hargett*, 819 S.W.2d 866, 868–69 (Tex. Crim.App.1991).

4. All citations to code provisions in this opinion refer to the code of criminal procedure unless otherwise specified.

ed.[5] *See* TEX.CODE CRIM.PROC.ANN. arts. 28.061, 32.01. The precise definition of good cause remains undefined. *See State v. Condran*, 951 S.W.2d 178, 182 (Tex.App.—Dallas 1997, pet. filed); *see also In re Striegler*, 915 S.W.2d 629, 642 (Tex.App.—Amarillo 1996, writ denied). However, at least one court has said that the good cause exception allows the State to present factors such as those set out in *Barker v. Wingo*.[6] *See Norton v. State*, 918 S.W.2d 25, 29 (Tex.App.—Houston [14th Dist.] 1996, pet. granted). The trial court's consideration of these factors is not mandatory because they relate to a defendant's constitutional right to a speedy trial, not to preindictment delay. *See Condran*, 951 S.W.2d at 182.

At the hearing on appellant's application for habeas relief, Christy Jack, a prosecutor in the Crimes Against Children Unit of the Tarrant County District Attorney's Office, testified that the investigation was "massive" and on-going, and involved the Fort Worth and White Settlement police agencies, Child Protective Services, and a task force from the Federal Bureau of Investigation. She also testified that the State was delayed by having to reorder information on appellant's previous federal offense, and there were numerous exhibits, including videotaped statements from the alleged victims and witnesses. She further testified that the caseload for grand jury indictments was transferred to her on August 14, 1995, after appellant was arrested but before he was indicted. Jack explained that it is the goal of the Tarrant County District Attorney's Office to present the grand jury with comprehensive information, conducting its own review of a case, and not relying solely on information in an arrest warrant.

However, Jack also testified that in all three cases, Fort Worth Police Detective John McCaskill completed an initial investigation before appellant was arrested. She acknowledged that each of McCaskill's affidavits in support of the arrest warrants detailed information obtained from the investigations, including statements of the alleged victims and potential witnesses. Jack testified that there was sufficient evidence in August 1995 to present the cases to the grand jury. She also acknowledged that, although she had to reorder appellant's federal penitentiary packet, she received the second packet on September 8, 1995, five months before appellant was indicted. At the close of the hearing, the trial court found that the State had met its burden of showing good cause for its failure to timely indict appellant.

■ The court of criminal appeals has recently discussed the amount of deference that we, as an appellate court, should afford to trial court rulings. *See Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App. 1997). In *Guzman*, the court stated that an appellate court should defer to a trial court's determination of historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *See id.* at 88–89. Appellate courts should afford the same deference to a trial court's rulings on the application of law to fact questions, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *See id.*, at 88–89 However, appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category. *Id.* at 89. Because the facts set out by the State in this case to establish good cause for its failure to timely indict appellant are undisputed, and because our determination of whether those facts establish good cause within the meaning of article 32.01 requires us to apply the law to those facts, we exercise our discre-

---

5. In this case, the trial court made no findings of fact or conclusions of law. However, when a trial court fails to make specific findings of fact and conclusions of law, it is presumed that the court made the necessary findings to support its decision. *See Ice v. State*, 914 S.W.2d 694, 695 (Tex.App.—Fort Worth 1996, no pet.).

6. The factors the United States Supreme Court has delineated as useful to determine if a defendant's right to a speedy trial has been violated are the following: (1) the length of delay before trial, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) any prejudice to a defendant resulting from that delay in trial. *See Barker v. Wingo*, 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972).

tion under *Guzman* to review the trial court's ruling *de novo. See id.*

Reasons for the delay in indictment similar to the ones the State provided at the writ hearing have been considered and rejected in the context of a defendant's right to a speedy trial. For instance, the court of criminal appeals did not consider a defendant's attempts to informally resolve a related civil action together with the pending criminal case at issue an "exceptional circumstance" to excuse the delay of trial. *See McClellan v. State,* 742 S.W.2d 655, 656 (Tex.Crim.App. 1987), *cert. denied,* 484 U.S. 1074, 108 S.Ct. 1048, 98 L.Ed.2d 1010 (1988). Likewise, the State's failure to analyze drug evidence and the fact that the grand jury already had a full case load were not exceptional circumstances justifying delay. *See Lloyd v. State,* 665 S.W.2d 472, 475–76 (Tex.Crim.App. [Panel Op.] 1984). Similarly, the delay resulting from a mistake in the processing of a bail bond in a sheriff's office did not constitute an exceptional circumstance. *See Lyles v. State,* 653 S.W.2d 775, 778 (Tex.Crim.App.1983).

■ In *Condran,* the trial court's finding that the State had failed to show good cause for the delay in indicting Condran was upheld based on the State's lack of diligence in submitting evidence for forensic examination. *See Condran,* 951 S.W.2d at 183–84. Reviewing the evidence presented to the court at the writ hearing in this case *de novo,* the State essentially presented no evidence to support its position that it was unable to

indict appellant timely. Accordingly, we conclude that the State did not meet its burden to show sufficient good cause for failing to indict appellant at the next term of court.[7]

## Constitutionality of TEX.CODE CRIM.PROC.ANN. arts. 32.01 & 28.061
### *Separation of Powers Provision*

■ Because the State did not establish good cause, it is barred from prosecuting appellant unless either article 32.01 or article 28.061 is unconstitutional. Because this bar to prosecution establishes a present injury to the State, we will consider the State's contention that these articles are unconstitutional. *See Meshell v. State,* 739 S.W.2d 246, 251 (Tex.Crim.App.1987). The State argues that articles 32.01 and 28.061 infringe on an exclusive prosecutorial function in violation of the separation of powers doctrine[8] of the Texas Constitution. The constitutionality of these provisions has recently been addressed by both the Dallas and the Austin Courts of Appeals. *See State v. Condran,* 951 S.W.2d at 184; *Ex parte Mallares,* 953 S.W.2d 759, 761–64 (Tex.App.—Austin 1997, n.w.h.).[9] In *Condran,* the court relied on the court of criminal appeals decisions in *Meshell,* 739 S.W.2d at 250 and *Jones v. State,* 803 S.W.2d 712 (Tex.Crim.App.1991).

### *Meshell v. State*

In *Meshell,* the court of criminal appeals held that the Speedy Trial Act violated the

7. In this case, the indictment in cause number 0584922 would have been timely if presented by the end of September 1995. Even taking into account the delay in receiving the federal penitentiary packet, the State still had several weeks to present the case to the grand jury. As to cause numbers 0591478 and 0591479, the State had until the end of December 1995 to secure an indictment, four months from the date of arrest.

8. The separation of powers provision provides as follows:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another; and those which are Judicial to another; and no person, or collection of persons, being one of these departments, shall exercise any power properly at-

tached to either of the others, except in the instances herein expressly permitted.
TEX. CONST. art. II, § 1.

9. In *Mallares,* the court rejected the State's contention that article 32.01 suffered from the same defect that caused the court of criminal appeals to declare the Speedy Trial Act unconstitutional. *See Ex parte Mallares,* at 761–64. The court held that article 32.01 was not a legislative attempt to indirectly speed criminal cases to trial, but was, instead, a way of implementing the constitutional right to indictment. *See id.* at 763. *Mallares* is distinguishable from this case and from *Condran,* however, because in *Mallares,* the State only challenged the constitutionality of article 32.01, not article 28.061. Because we perceive no constitutional infirmity in the requirement of article 32.01 that a defendant be indicted within the next term of court or be released from bail, we do not disagree with the court's decision in *Mallares.*

separation of powers provision by mandating a prosecutor's preparation and announcement of ready for trial. *Meshell,* 739 S.W.2d at 257. In reaching its decision, the court addressed the separation of powers doctrine and found that the right to exercise sole discretion in the preparation of criminal cases for trial is included within the exclusive function of district and county attorneys in Texas. *See id.* "Therefore, under the separation of powers provision, the Legislature may not remove or abridge a district or county attorney's exclusive prosecutorial function, unless authorized by an express constitutional provision." *Meshell,* 739 S.W.2d at 255–56. The court recognized that article V, section 25 of the Texas Constitution expressly "intends that the Legislature have ultimate control over establishment of procedural rules of court." *Id.* at 255, (citing TEX. CONST. art. V, § 25 (repealed 1985)). The court went on to write that while the legislature has the authority to pass laws controlling the manner, means and mode of assertion of a defendant's rights, that authority is conditioned on the existence of a substantive right. "Were it otherwise, the procedural legislation would itself create a substantive 'right,' and exceed the grant of power in Article V, section 25, thereby encroaching upon another department." *Meshell,* 739 S.W.2d at 255. By identifying the substantive right the Act sought to regulate, the court exposed the Act's fatal flaw: the Speedy Trial Act did not seek to protect a defendant's constitutionally guaranteed right to speedy commencement of trial, but rather, was directed at speeding the prosecutor's preparation and ultimate readiness for trial. In addition, the statute neglected to take into account those factors previously found to be important to the determination of whether a defendant's constitutional right to speedy commencement of trial had been violated. The court concluded that merely requiring a prosecutor to announce "ready" did little to secure actual commencement of trial because

the Act failed to impose any additional burden on the State to proceed to trial. Consequently, the failure of the Act to ensure a defendant's right to a speedy trial rendered the legislature's attempt to control a prosecutor's preparation for trial outside the purview of article V, section 25, or any other constitutional provision, and, therefore, a violation of the separation of powers provision.

## Jones v. State

The court of criminal appeals considered the State's claim that article 17.151 [10] of the code of criminal procedure unconstitutionally interfered with the prosecutor's discretion in preparing cases in *Jones v. State,* 803 S.W.2d 712, 716 (Tex.Crim.App.1991). In *Jones,* unlike *Meshell,* the court focused on whether the legislature "unduly interfered" with a prosecutorial function. *See id.* at 716. The court concluded that article 17.151 placed less of a burden on prosecutorial discretion than the Speedy Trial Act because article 17.151 only required that the accused be released from jail or have his bond reduced. The State was not required to dismiss the indictment. *See id.* Article 17.151 only ensured that an accused would not be incarcerated while awaiting trial. *See id.* Therefore, the court held that article 17.151 did not unduly interfere with a prosecutorial function.

## Analysis

 Like the courts in *Meshell* and *Condran,* we begin our review of the constitutionality of articles 32.01 and 28.061 by searching for the constitutional provision that would sanction the legislature's action. The legislature has ultimate authority over judicial "administration" and may enact procedural guidelines to provide statutory enforcement of a substantive right. *See* TEX. CONST.

---

10. Article 17.151 provides in pertinent part:

A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing *the amount of bail required.* If the State is not ready for trial of the criminal action for which he is being detained within:

(1) 90 days from the commencement of his detention if he is accused of a felony.

TEX.CODE CRIM.PROC.ANN. art. 17.151(1) (Vernon Supp.1998).

art. V, § 31 (1985);[11] *Armadillo Bail Bonds v. State,* 802 S.W.2d 237, 240 (Tex.Crim.App. 1990); *Meshell,* 739 S.W.2d at 255; *Williams v. State,* 707 S.W.2d 40, 45 (Tex.Crim.App. 1986). Because district and county attorneys are part of the judicial branch, they are entitled to protection under the separation of powers doctrine. *See Jones,* 803 S.W.2d at 715; *see also Meshell,* 739 S.W.2d at 253–56. The Texas Constitution provides, "No person shall be held to answer for a criminal offense, unless on an indictment of a grand jury." TEX. CONST. art. 1, § 10. Every defendant in a criminal prosecution has the right to an indictment. *See id.* Therefore, by initially enacting articles 32.01 and 28.061, the legislature was not creating the right to indictment, but was instead legislating to ensure protection of that right.

■ After analyzing *Meshell* and *Jones,* and relying on the rationale in *Condran,* we review the separation of powers provision itself. *See Jones,* 803 S.W.2d at 716; *Meshell,* 739 S.W.2d at 246; *Condran,* 951 S.W.2d at 188–90. The provision was designed to prohibit one branch of government from interfering with another branch's exclusive power unless an express provision of the constitution authorizes the action. *See Meshell,* 739 S.W.2d at 254; *Condran,* 951 S.W.2d at 189; *see also* TEX. CONST. art. IV, § 22. However, the legislature may define certain parameters within the operation of the judicial branch. *See Meshell,* 739 S.W.2d at 254; *see also* 1 GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS, 463–67 (George D. Braden ed., 1977).

■ We first examine article 32.01 to determine whether it violates the separation of powers doctrine. *See Condran,* 951 S.W.2d at 189. In our comparison of article 32.01 to the Speedy Trial Act and to article 17.151, we note that article 32.01 is similar to the Speedy Trial Act because both provisions provide a time limit in which the State must be prepared to act and both provide exceptions that may toll the applicable time period.[12] However, article 32.01 provides the State a considerably longer time period in which to act. Additionally, article 32.01 existed at least thirty years without the enforcement mechanism of 28.061.[13] The only consequence of article 32.01 standing alone is a dismissal of the prosecution and the discharge from bail. It does not unduly burden the prosecution.

We next compare article 32.01 to article 17.151, which the court in *Jones* examined. *See Jones,* 803 S.W.2d at 716–17. Because both articles create rights and neither article unduly burdens the State, article 32.01 is more similar to article 17.151 than to the Speedy Trial Act. Therefore, without the enforcement mechanism of article 28.061, article 32.01 does not violate the separation of powers provision. We reject the State's argument that article 32.01 is unconstitutional.

■ We next examine article 28.061 to determine whether the legislature unduly interfered with the State's prosecutorial function by amending the article to bar further prosecution for article 32.01 violations. *See Condran,* 951 S.W.2d at 190. In doing so, we look to the legislative history of article

---

11. Article V, section 31 provides:

(a) The Supreme Court is responsible for the efficient administration of the judicial branch and shall promulgate rules of administration not inconsistent with the laws of the state as may be necessary for the efficient and uniform administration of justice in the various courts.

(b) The Supreme Court shall promulgate rules of civil procedure for all courts not inconsistent with the laws of the state as may be necessary for the efficient and uniform administration of justice in the various courts.

(c) The legislature may delegate to the Supreme Court or Court of Criminal Appeals the power to promulgate such other rules as may be prescribed by law or this Constitution, subject to

such limitations and procedures as may be provided by law.
TEX. CONST. art. V, § 31 (1985).

12. *Compare* TEX.CODE CRIM.PROC.ANN. art. 32.01 (Vernon 1989) *with* TEX.CODE CRIM.PROC.ANN. art. 32A.02 (Vernon 1989), *declared unconstitutional by Meshell v. State,* 739 S.W.2d 246 (Tex.Crim. App.1987); *Condran,* 951 S.W.2d at 189.

13. *See* Act of May 23, 1977, 65th Leg., R.S., ch. 787, § 4, 1977 Tex.Gen.Laws 1970, 1971, *amended by* Act of June 1, 1987, 70th Leg., R.S., ch. 383, § 1, 1987 Tex.Gen.Laws 1885, 1885 (current version at TEX.CODE CRIM.PROC.ANN. art. 28.061 (Vernon Supp.1998)); *see also Condran,* 951 S.W.2d at 189.

28.061.[14] That article was amended at the same time as article 32A.02.[15] These articles, along with article 32.01 encompassed the Speedy Trial Act.[16] However, the amendment to article 28.061 was only minimally discussed in the legislature and then only as a means of forcing prosecutors to clear overcrowded court dockets. *See* Klaas, 23 AM.J.CRIM.L. at 358–59; *see also Condran*, 951 S.W.2d at 190. However, it is this type of control that may run afoul of the separation of powers doctrine.[17] The purpose of article 32.01 is to release an accused from incarceration or bail. However, this purpose is achieved by article 32.01 alone. Therefore, article 28.061's bar to prosecution unnecessarily shifts the focus from releasing the accused to infringing on the State's ability to obtain an indictment within a certain time frame. *See Condran*, 951 S.W.2d at 190.

In our determination that article 28.061 unconstitutionally infringes on prosecutorial discretion, we consider the wide discrepancies in terms of court across the state, the fact that a grand jury may request additional information, and the fact that a prosecutor is often unable to guarantee that the grand jury will act within the time limits of article 32.01. *See id.* at 190–91. Because of the factors beyond the State's control and the fact that the State may not always be able to satisfy the good cause exception regardless of how broadly it is read, we hold that, by amending article 28.061 to create a bar to further prosecution for cases dismissed under article 32.01, the legislature unconstitutionally infringed on prosecutorial discretion in violation of the separation of powers doctrine. Therefore, we next consider the State's claim that appellant's article 32.01 claim is moot.

### Mootness

As stated previously, article 28.061 was amended in 1987 to make it applicable to article 32.01. Before its amendment, a dismissal under article 32.01 did not prevent further prosecution. *See Condran*, 951 S.W.2d at 191; *Ex parte Knight*, 904 S.W.2d 722, 725 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). Therefore, the State could refile charges that were dismissed under article 32.01. Because the dismissal was temporary, an accused was required to raise an article 32.01 complaint before being indicted, or the complaint was rendered moot. *See Tatum v. State*, 505 S.W.2d 548, 550 (Tex.Crim.App. 1974); *Garay v. State*, 683 S.W.2d 21, 22 (Tex.App.—Waco 1984, pet, ref'd).

After article 28.061 was amended, a defendant was not required to obtain a ruling on an article 32.01 complaint before being indicted. *See Norton v. State*, 918 S.W.2d 25, 29 (Tex.App.—Houston [14th Dist.] 1996, pet. granted); *Ex parte Knight*, 904 S.W.2d at 725. However, because we have held article 28.061 is unconstitutional, we rely on the cases that were decided before its amendment and hold that appellant's failure to obtain a ruling on his article 32.01 complaint before his indictment renders his complaint moot.

### Conclusion

Reviewing the evidence presented at the writ hearing *de novo*, we hold that the State failed to establish good cause for its failure to timely indict appellant. However, we determine that article 28.061 violates the separation of powers doctrine by unconstitutionally infringing on prosecutorial discretion. Therefore, appellant's delay in raising his article 32.01 complaint until after his indictment renders his complaint moot.

*Texas Code of Criminal Procedure*, 23 AM.J.CRIM.L. 353, 358 (1996).

**14.** *See supra* note 13.

**15.** Act of May 23, 1977, 65th Leg., R.S., ch. 787, § 1, 1977 Tex. Gen. Laws 1970, 1970, *amended by* Act of June 1, 1987, 70th Leg., R.S., ch. 383, § 2, 1987 Tex.Gen.Laws 1885, 1885 (current version at TEX.CODE CRIM PROC.ANN. art. 32A.02 (Vernon 1989)).

**16.** *See* Elizabeth Klaas, *Dismissal for Pre–Indictment Delay under Articles 32.01 and 28.061 of the*

**17.** One senator commented that the bill's purpose "is to ensure that they will prosecute criminals or those cases will be dismissed. And it puts the burden on a district attorney to really get after his cases." *See* Klaas, 23 AM.J.CRIM.L. at 361; *see also Condran*, 951 S.W.2d at 190–91.

Accordingly, we sustain the trial court's order denying appellant's application for habeas relief.