Ex parte Anthony John TORRES.

No. 04–96–00161–CR.

Court of Appeals of Texas,
San Antonio.

March 18, 1998.

Joel Perez, San Antonio, for Appellant.

Robert Boyd Padgett, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF, LÓPEZ, STONE, GREEN, DUNCAN and ANGELINI, JJ., en banc.[1]

1. Chief Justice Alfonso Chapa, who participated in the original en banc opinion in *Ex parte Lawson,* has since retired from the court and did not participate in the consideration of these motions for rehearing.

## OPINION ON MOTION FOR CONSIDERATION EN BANC AND ON MOTION FOR REHEARING

GREEN, Justice.

The State has filed motions for rehearing and for consideration *en banc* in a case involving a delayed indictment. For the reasons stated in this opinion, we grant the motion for rehearing *en banc* and, having done so, deny the relief requested.

### Jurisdiction

■ In its first point of error, the State challenges our jurisdiction to review this matter as a habeas corpus appeal. The State claims that the application for writ of habeas corpus did not allege one of the recognized exceptions to the general rule. Generally, a defendant may not seek pre-trial habeas corpus relief where there is an adequate remedy by appeal after final judgment. *Ex parte Matthews,* 873 S.W.2d 40, 42 (Tex.Crim.App. 1994). Thus, we do not review pre-trial: speedy trial issues, *see Ex parte Delbert,* 582 S.W.2d 145 (Tex.Crim.App.1979); due process complaints, *see Ex parte Gonzales,* 667 S.W.2d 932 (Tex.App.—Austin 1984, pet. ref'd); or sufficiency of the complaint, information, or indictment claims, *see Ex parte Dickerson,* 549 S.W.2d 202 (Tex.Crim.App. 1977) (holding on other issues superseded by statutory amendment in 1985).

■ A defendant may, however, resort to pretrial habeas corpus to challenge an indictment under other circumstances. For example, we have the authority to review a challenge to the tolling provision of article 12.05(b) (absence from state). *See Ex parte Matthews,* 873 S.W.2d 40, 43 (Tex.Crim.App. 1994). We may also review a pre-trial appeal where the indictment, on its face, shows that the offense charged is barred by limitations. *See Ex parte Dickerson,* 549 S.W.2d at 203. A defendant may also raise by pre-trial habeas corpus appeal a challenge to the validity of the statute allegedly violated. *See Ex parte Meyer,* 172 Tex.Crim. 403, 357 S.W.2d 754, 755 (1962). Finally, a defendant may raise pre-trial his or her claims concerning double jeopardy, collateral estoppel, and bail. *See Stephens v. State,* 806 S.W.2d 812 (Tex.Crim.

App.1990); *Ex parte Culver,* 932 S.W.2d 207, 211 (Tex.App.—El Paso 1996, pet. ref'd).

A number of courts have given pre-trial review of delayed indictment cases recently. *See, e.g., Ex parte Knight,* 904 S.W.2d 722 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd); *Norton v. State,* 918 S.W.2d 25 (Tex. App.—Houston [14th Dist.] 1996, pet. granted); *State v. Ybarra,* 942 S.W.2d 35 (Tex. App.—Corpus Christi 1996, pet. granted). The 1985 amendments to the Texas Constitution and the code of criminal procedure were aimed at eliminating *post*-conviction attacks on indictments. *See* TEX. CONST. art. V, § 12(b); TEX.CODE CRIM. PROC. ANN. art. 1.14(b); *Ex parte Matthews,* 873 S.W.2d 40, 41–42. The *Matthews* opinion held that these amendments did not alter appellate jurisdiction relating to *pre*-trial applications for writ of habeas corpus. *Id.*

■ We see no distinction between the power to review indictments to construe a tolling provision or a limitations statute on the one hand and the timeliness of the indictment on the other. Timeliness is not a sufficiency issue. It is most closely akin to limitations issues. The *Delbert* opinion concerning a speedy trial issue is distinguishable because it was not a challenge to the indictment, rather it concerned the failure to bring the defendant to trial within 120 days under the former speedy trial act, since declared unconstitutional. *See Meshell v. State,* 739 S.W.2d 246 (Tex.Crim.App.1987). The State's first point of error is overruled.

The State also raises for the first time on rehearing a constitutional challenge to articles 32.01 and 28.061 of the code of criminal procedure. The State claims these articles are unconstitutional as a violation of the separation of powers doctrine because they "unduly interfere" with a prosecutor's exclusive function to prosecute cases.

### Raising a Constitutional Issue on Rehearing

The State asserts that "the constitutionality of an enactment may be challenged for the first time on appeal" citing *Rabb v. State,* 730 S.W.2d 751 (Tex.Crim.App.1987). The State does not, however, present any analysis of

this assertion or the applicability of *Rabb* to this case. *Rabb* stands for the proposition that a defendant who failed to object at trial may still challenge on appeal the constitutionality of a statute upon which his conviction is based. *Rabb*, 730 S.W.2d at 752. Every case citing to the *Rabb* opinion, however, concerns a defendant's constitutional challenge based upon a defendant's conviction. *See Webb v. State*, 899 S.W.2d 814, 818 (Tex.App.—Waco 1995, pet. ref'd) (*Rabb* rule not applied to untimely challenge of statute authorizing arrest because issue does not go to the judicial power of court to enter and enforce judgment). The case has not been used to permit an untimely constitutional challenge by the State.

The court of criminal appeals has since ruled, however, that when a party raises a new ground for the first time on motion for rehearing, the decision of whether to consider that new matter is left to the sound discretion of the appellate court. *See Rochelle v. State*, 791 S.W.2d 121, 124 (Tex.Crim.App. 1990). There the State had raised an art. 1.14(b) waiver argument for the first time on rehearing after the court of appeals found an indictment fatally defective, reversed the conviction, and dismissed the indictment. *See id.* at 122. The court of criminal appeals analyzed portions of former appellate procedure rule 74 and concluded that the purpose of rule 74(p) was that

> all points of error sought to be reviewed and all replies thereto are to be included in the original brief. Supplemented or amended briefs bringing new matters to the appellate court may be filed later, but only "as justice requires" or "in the interest of justice" and under reasonable terms imposed by the court. The implication is that such briefs may be filed and considered only with leave of the appellate court. The idea that a party may *force* a new issue on an appellate court after briefs have been filed *is foreign to the rules*, although constitutional restraints such as due process may so require in a given case. The same is true for compelling matters that rise to the level of "in the interest of justice." Short of those situations, the decision whether to consider new matters raised in a supplemented or amended brief

should be left to the sound discretion of the appellate court.... Here, of course we are dealing with a motion for rehearing, as opposed to a brief on original submission, but we are guided by these principles which are meant to result in a presentation to the court of appeals that is both orderly and timely.

*Id.* at 124 (citations omitted). The court further stated:

> In the absence of any indication to the contrary, such as a written opinion on rehearing, we will assume that the court of appeals declined, in its discretion, to consider the new matter. Thus, overruling of such a motion for rehearing, without written opinion, will not be considered a ruling on an issue "necessary to final disposition of the appeal" and thus will not be a part of the decision of the court of appeals upon which we will base review. Rule 200(a). To hold otherwise would fly in the face of the heretofore stated policy of the rules that all matters be raised in the original brief. It would also force the appellate courts to issue written opinions on rehearing pursuant to Rule 90(a). Moreover, to hold to the contrary would encourage piecemeal appellate litigation in the courts of appeals, which is clearly not the object sought to be attained by the promulgation of the rules.

*Id.* at 124–25. In *Rochelle*, the high court declined to hear the merits of the State's argument because it found that art. 1.14 had become law more than a year prior to the filing of the State's brief in the court of appeals and that no significant decisions interpreting the statute had been rendered nor any amendments passed which would compel the court to exercise its discretion on rehearing. Thus, the State failed to preserve the alleged error for review. *Id.* at 125. The same reasoning might be applied here since the amendment to art. 28.061 which upgraded a dismissed indictment under art. 32.01 to be one with prejudice has been on the books since 1987.

In *Boyle v. State*, the State raised non-constitutional issues, i.e., third party consent to the search and lack of standing to

assail the search, for the first time on a motion for rehearing to the court of criminal appeals. This time the court of criminal appeals was presented with the issue on rehearing from a direct appeal of a capital murder conviction. The court exercised its discretion to grant the motion for rehearing. *Boyle v. State,* 820 S.W.2d 122, 141 (Tex. Crim.App.1989) (citing *Rochelle* at 124, 125), *cert. denied,* 503 U.S. 921, 112 S.Ct. 1297, 117 L.Ed.2d 520 (1992). Thus, under *Rochelle,* this court may exercise its discretion to hear the issue whether or not the new issue raises constitutional challenges.

### Separation of Powers Analysis

The Texas Constitution divides the powers of state government into "three distinct departments"—legislative, executive, and judicial—and members of one department may not properly exercise the authority of the other unless that power is grounded in a constitutional provision. *See* TEX. CONST. art. II, § 1.

■ A review of the separation of powers analysis is a two-step process: (1) Does the statute unduly interfere with the prosecutor's exclusive prosecutorial function of preparing a case for prosecution? and if so, (2) Is the enactment authorized by a constitutional provision? TEX. CONST. art. II, § 1; *Jones v. State,* 803 S.W.2d 712, 716 (Tex.Crim.App. 1991); *Meshell v. State,* 739 S.W.2d 246, 255 (Tex.Crim.App.1987). Only if we find undue interference need we engage in the second step of the analysis. *Jones,* 803 S.W.2d 716.

On the issue of "undue interference" the State draws a comparison between the unprepared prosecutor vis-a-vis the Speedy Trial Act, article 32A.02 (held unconstitutional in *Meshell* ), and the unprepared prosecutor with a late indictment under article 32.01. A prosecutor has the opportunity under each article to · extend the deadlines for good cause. When a prosecutor is unable to do so,

however, the prosecution can be set aside. The State, citing to *Meshell* and *Jones,*[2] argues that the possibility of a dismissal with prejudice unduly interferes with the prosecutor's exclusive prosecutorial function of preparing cases.

We must begin our analysis with a presumption that the purposes of articles 32.01 and 28.061 are constitutional. *See State v. Edmond,* 933 S.W.2d 120, 124 (Tex.Crim. App.1996); *Smith v. State,* 898 S.W.2d 838, 847 (Tex.Crim.App.1995); *. see also* TEX. GOV'T CODE § 311.021 (Vernon 1988).

### Article 32.01[3]

As of this date, four of our sister courts have overruled challenges to article 32.01 on constitutional grounds. In *Norton v. State,* the State argued that article 32.01 was unconstitutional and that its enforcement vehicle, article 28.061 is therefore unconstitutional. *Norton v. State,* 918 S.W.2d 25, 28 & n. 4 (Tex.App.—Houston [14th Dist.] 1996, pet. filed). The State's position in *Norton* was that article 32.01 is constitutionally infirm because it does not incorporate the same four ·speedy trial clause factors considered in *Barker v. Wingo* which were held to be critical to any infringement on a state's discretion to prosecute. The Fourteenth Court, stating that 32.01 is not a speedy trial mechanism, rejected this argument for the following reasons:

(a) Requiring the State to formally charge a defendant within a specified time is far less burdensome than requiring it to be ready for trial within a specified time.

(b) The Houston grand juries have six-month terms; there is much less pressure to indict in six months than to go to trial in that length of time.

(c) The good cause exception serves as a procedural safeguard to allow the prosecutor to present facts such as those in *Bark-*

---

**2.** In *Jones* the court of criminal appeals concluded that article 17.151, which requires the setting of reasonable bail for the accused if the state is not ready to prosecute within a specified time, was constitutional. It held that the Legislature neither assumed a prosecutorial function nor unduly interfered with one when enacting this provision of the code. *Jones,* 803 S.W.2d at 716.

**3.** Tex.Code Crim. Proc. Ann. art. 32.01, *amended by* Act of May 26, 1997, 75th Leg., R.S., ch. 289, § 2, 1997 Tex. Gen. Laws 1304. All references to article 32.01 are to the statute as it existed prior to the 1997 amendment.

*er* or as might otherwise justify a late indictment.

*Id.* at 29 (Edelman, J., majority opinion). In a concurring opinion, Justice Hudson stated that article 32.01 is sufficiently grounded in article I, section 10 of the Texas Constitution which states that "no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury." Norton was held for 10 months, albeit out on bail, without indictment. Justice Hudson stated:

> I would hold that the purpose of Article 32.01 is not to guarantee a speedy trial, but to enforce a defendant's constitutional right to indictment by a grand jury. The statute interferes to some extent with the prosecutor's discretion, but its mandate to secure an indictment before the expiration of the next term after a defendant's arrest is not unreasonable. Moreover, the statute provides that if unusual circumstances frustrate the State's attempts to secure an indictment within the statutory time limits, an extension may be obtained upon a showing of good cause supported by affidavit. For these reasons, I believe Article 32.01 does not improperly infringe upon the prosecutor's discretion.

*Id.* at 30 (Hudson, J., concurring). The State argues that *Norton* misconstrues *Meshell* as a speedy commencement of trial act case, when it was really a speedy announcement of ready act issue. *See Meshell*, 739 S.W.2d at 257. We do not agree that presenting the State's case to the Grand Jury puts the State to the same test as announcing ready for trial where opposing counsel will have an opportunity to present another point of view to the fact finder. The burdens are decidedly different. And in that regard, article 32.01 is distinguishable from 32A.02.

The Austin Court of Appeals recognizes that 32.01

> interferes with a prosecutor's discretion to the extent that it does not permit an indefinite delay in taking a case before a grand jury if the defendant is in jail or on bail. But this interference is only an incidental

result of the statutory procedure for asserting the right to indictment.

*Ex parte Mallares*, 953 S.W.2d 759 (Tex. App.—Austin 1997, no pet.). The good cause provision provides a safety valve for prosecutors who, with due diligence, cannot meet this timetable. The court acknowledged that the statute places a greater burden on prosecutors working with short court terms and found that this factor could be taken into consideration in a good cause analysis. *See id.* at 763. The court found the enactment of this statute to be within the legislature's authority to "regulate the means, manner, and mode of asserting a defendant's right to indictment." *Id.; accord Norton*, 918 S.W.2d at 30 (Hudson, J., concurring).

The Fort Worth and Dallas courts of appeal also find 32.01 constitutional when considered alone. *See Ex parte Barnes*, 959 S.W.2d 313 (Tex.App.—Fort Worth 1997, no pet.); *State v. Condran*, 951 S.W.2d 178 (Tex. App.—Dallas 1997, pet. granted). Both courts, however, find its enforcement mechanism, article 28.061, violates the separation of powers doctrine. *See id.*

### Article 28.061[4]

Three opinions out of Houston have previously found article 28.061 constitutional and a survivor of the *Meshell* determination that the Speedy Trial Act was unconstitutional. Article 28.061 was originally passed in 1977 as an enforcement vehicle for article 32A.02, and to that extent, 28.061 was also held unconstitutional. *See Meshell*, 739 S.W.2d at 258. However, the Legislature amended article 28.061 in 1987, effective after the *Meshell* decision was issued. The amendment incorporated an article 32.01 dismissal into 28.061. The First Court of Appeals held that

> the amended version of article 28.061 survives *Meshell* as it applies to article 32.01. Article 28.061 was declared unconstitutional only in its capacity as an enforcement mechanism of the Speedy Trial Act. We believe that the Court of Criminal Appeals did not intend to void the statute of this role. Therefore, amended article 28.061 is

---

4. Act of June 1, 1987, 70th Leg., R.S., ch 383, § 1, 1987 Tex. Gen. Laws 1885, *amended by* Act of May 12, 1997, 75th Leg. R.S. ch. 289, § 1, 1997 Tex. Gen. Laws 1304. All references to article 28.061 in this opinion are to the statute as it existed prior to the 1997 amendment.

still viable as an enforcement tool of article 32.01.

*Nguyen v. State*, 882 S.W.2d 471, 473 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *Nix v. State*, 882 S.W.2d 474, 476 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). The First Court of Appeals noted that its opinions did not speak to the constitutionality of article 32.01 because that issue was not before the court. *Id.* at 473 n. 2; 476 n. 2. The State does not cite to either case in its brief.

The *Barnes* and *Condran* opinions have found undue interference in prosecutorial discretion as a result of the Legislature's 1987 amendment to article 28.061. Both courts focused on several factors which may place the time line for a speedy indictment beyond a prosecutor's control—"the wide discrepancies in terms of court across the state, the fact that a grand jury may request additional information, and the fact that a prosecutor is often unable to guarantee that the grand jury will act within the time limits of article 32.01." *Barnes,* at 320; *Condran,* 951 S.W.2d at 190–91.

Although other courts have found that the good cause provision serves as a safety valve and mitigates against the harshness of a dismissal with prejudice, the *Condran* opinion expressed concern that "[t]he State will not always be able to meet the good cause exception no matter how broadly it is read and whether it includes the *Barker* factors or otherwise." *Condran,* 951 S.W.2d at 191; *see also Barnes,* at 320. We fail to understand why such factors beyond a prosecutor's control would not provide grounds for good cause for delay. Nor do we think that anything less than a wide-open, indefinite timetable for indictment unduly interferes with prosecutorial discretion. While the constitution does not expressly guarantee a speedy indictment it also does not provide that a prosecutor may hold a person under arrest or its equivalent indefinitely. We respectfully disagree with the State's argument and the conclusions the Fort Worth and Dallas courts have reached on this issue.

## Good Cause for Delay

Indeed, where terms of court are relatively short or vary among courts in the same jurisdiction, the Austin Court of Appeals has found this to be a factor to consider in determining whether the State has shown good cause for delaying the indictment. *See, e.g., Ex parte Martin,* 956 S.W.2d 843 (Tex. App.—Austin 1997, no pet. hist.)*; Ex parte Mallares,* 953 S.W.2d 759, 763 (Tex.App.— Austin 1997, no pet.). Other mitigating factors to consider include a shortage of personnel in the police department which caused a backlog of police reports, *see Martin; Ex parte Pena,* 955 S.W.2d 325 (Tex.App.—San Antonio 1997, pet. ref'd), a prosecutorial policy not to seek indictment until lab reports on suspected contraband were analyzed, *see Mallares,* delay caused by defendant's attempts to negotiate a deal, *see Wilkinson v. State,* 899 S.W.2d 20 (Tex.App.—San Antonio 1995, pet ref'd), *overruled on other grounds, Ex parte Lawson,* 966 S.W.2d 532 (Tex. App.—San Antonio 1996, pet. filed), and the lack of any evidence of deliberate delay by the prosecutor, *see Martin; Mallares.* The good cause hearing is the place where the prosecutor has the opportunity to bring forth the *Barker* factors or any other justification for the delayed indictment. *See Norton,* 918 S.W.2d at 29.

A lack of diligence in submitting evidence for forensic examination, however, has been a factor in a court finding no good cause for delay. *See Condran,* 951 S.W.2d at 183–84. The lack of good cause for delay has sometimes resulted from the State's own failure to present any evidence at all in support of a good cause excuse. *See Barnes; Nix;* and *Nguyen.* That is the situation presented in this case where the State made no effort to justify the delay. *See also Fisk v. State,* 958 S.W.2d 506 (Tex.App.—Texarkana 1997, no pet. hist.) (state failed to present evidence of good cause for delay). It is the State's burden, and it is a reasonable burden, to show good cause by sworn affidavit when challenged by the defendant over the delay in obtaining an indictment.[5] As we stated in our earlier *Lawson* and *Torres* opinions, the

---

5. The State argues that the Legislature has taken the burden of proof away from the defendant and

placed it on the shoulders of the State, we disagree with the State's characterization. The de-

court and the State may have been misled by earlier dicta in *Wilkinson* into thinking that the State may dispense with the good cause hearing and need only raise a mootness argument following a delayed indictment.[6] It is for that reason that we provide the State with an opportunity to present its evidence of good cause for delay, if there be any.

### Conclusion

■ We agree with the *Norton* court that the combination of 28.061 and 32.01 is an interference, but not an undue interference. It is no more of an interference than any statute of limitations. The good cause provision is extremely broad. Our analysis need not extend to step two. The combined effect of these two statutes, however awkward and impractical, does not violate the separation of powers doctrine. The relief requested in the motion for rehearing *en banc* is denied.

DUNCAN, J., dissenting without opinion.

---

fendant as petitioner in a habeas corpus proceeding has the initial burden of establishing that the indictment was returned outside the time period permitted by article 32.01. Once established, the burden shifts to the State to establish good cause for the delay.

**6.** This confusion is apparent in two other courts of appeals as well. *See Fisk, supra* (court held defendant's failure to seek relief under art. 32.01 prior to indictment rendered habeas application moot); *Holleman v. State,* 945 S.W.2d 232 (Tex. App.—Amarillo 1997, pet. filed) (failure to seek relief until after indictment returned rendered motion to set aside indictment moot).